## APPEAL OF THE NACHMANN COMPANY.

Docket No. 4880.    Decided September 30, 1926.

*E. B. VanVeen, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the Commissioner.

This appeal involves the question whether a deductible loss of $3,000 was sustained in 1918 when a patent, on which petitioner had theretofore acquired a license for stock, was declared invalid. The Commissioner denied the deduction and determined a deficiency of $2,347.91 for 1918.

### FINDINGS OF FACT.

On February 16, 1909, United States Letters Patent No. 912456, covering new and useful improvements for the manufacture of felt mattresses and cushions, was granted. In 1914, Fred A. Nachmann, a resident of Chicago, Ill., became desirous of securing a license to use the rights under this patent, and, to that end, he went to Toronto, Canada, in August, 1914, for a conference with the Fischman Mat-

tress Co., Ltd., the owner of the patent, with the result that that company agreed to give him an exclusive license to manufacture the mattresses and cushions throughout the United States, with the exception of a certain portion of the State of New York. The license was executed April 9, 1915, and contained the following provisions:

The licensee agrees to pay the licensor Twenty-five cents (25 cents) as a royalty fee on each mattress, or complete mattress construction made or sold or consigned by any or all sub-licensees to whom sub-licenses may be granted by the licensee herein, and to pay to the licensor Two Cents (2 cents) per square foot (measured on the largest surface only of the article) as a royalty fee on all cushions or constructions adapted for use in cushions, and One Third (⅓) of a cent per linear foot for all spring units adapted for use in cushions or mattresses, made and sold or consigned by the licensee under this agreement, or made and sold or consigned by any or all sub-licensees to whom sub-licenses may be granted by the licensee herein, such payments to be made by the licensee each quarter by quarterly payments as aforesaid, provided * * *.

The licensee further agrees that the royalties herein reserved and payable hereunder to and until June 1, 1916, shall be not less than One Thousand Dollars ($1,000) that the royalties from June 1, 1916 to June 1, 1917, shall be not less than Two Thousand Dollars ($2,000), and that the royalties thereafter until the expiration of said Letters Patent No. 912,456, shall be not less than Three Thousand Dollars ($3,000) during any fiscal year beginning with June 1, 1917, unless the licensee discontinues the manufacture of articles hereunder in accordance with the provisions of paragraphs 9 and 18.

Article 9 provided that the licensee might cancel the agreement on the first day of June, 1916, by giving 60 days' notice prior thereto, and that thereafter the licensee might terminate the agreement on June first of any year upon 60 days' notice, and that " thereupon on the first day of June of the year mentioned in the said notice all the rights of the licensee shall be ended and the licensor expressly agrees that the licensee forthwith shall be released and discharged from his agreements to keep accounts, render statements, and pay royalties, as heretofore provided. * * * "

Article 16 provided:

That the licensee, his agents, customers, users or sub-licensees, may be protected against suits or infringement of any prior patent or patents on account of the manufacture, use or sale of mattresses, cushions, and like articles, under the Letters Patent aforesaid, the licensor hereby agrees, at his own expense, to defend any and all suits or proceedings which may be instituted against the licensee * * * for or on account of alleged infringement, and to pay all attorneys' fees, costs and expenses, and to discharge all judgments or decrees that may arise or be rendered in connection with such litigation. * * *

Article 17 provided:

If the said Letters Patent No. 912,456 * * * shall be declared invalid by a court of competent jurisdiction in any action or suit based upon said patent or patents and such invalidity shall be sustained by the decision of a

court of last resort, upon the entry of final judgment or decree establishing the invalidity of said patent or patents, all royalties payable herein shall forthwith cease to be payable and the life of this contract ·immediately shall cease and determine.

Immediately after his return from Toronto in August, 1914, Nachmann acquired a small number of tools and made samples, showing the application of the principle of the patent in the manufacture of mattresses and cushions, and visited numerous manufacturers throughout the United States whom he believed would be interested in using the patent, his purpose being to develop a patent to conform to the needs of the various concerns and to grant them a license to use the patent in the construction of the articles produced by them. In this connection, Nachmann expended in excess of $3,000 for tools, material, labor, and traveling expenses and subsistence.

In July, 1915, Nachmann, believing that through his experiments the patented article could be profitably marketed, interested Joseph and Daniel C. Hirsch in the matter of the formation of a corporation to produce the patented articles and to grant sub-licenses. It was agreed between the three of them that the corporation should be capitalized at the amount expended by Nachmann in developing the patent, by the assignment by Nachmann to the corporation of the license agreement, and that $2,500 par value of stock should be issued, one-third each to Daniel C. and Joseph Hirsch, and one-third to Nachmann. Daniel C. and Joseph Hirsch each agreed to pay Nachmann $1,000 for the stock issued to them. The corporation was duly organized and the stock was issued for the license.

On August 7, 1918, the board of directors adopted the following resolution:

WHEREAS, the Commissioners duly authorized for the formation and organization of this Corporation have approved and accepted in full payment for the Capital Stock of this Corporation, the business conducted and carried on at 300 North Elizabeth Street, Chicago, Illinois, under the management of Fred A. Nachmann, consisting of merchandise, machinery, tools, fixtures, etc., and including a license to manufacture goods and merchandise under a patent issued by the United States Government under Serial Number 912456.

THEREFORE, BE IT RESOLVED, That this Board of Directors hereby approve said action of the said Commissioners and hereby accept said business in full payment for the Capital Stock of this Corporation, and hereby authorize and instruct the President and Secretary to issue Stock Certificates of this Corporation in full payment for said business, to the amount of Two Thousand Five Hundred Dollars ($2,500.00), same being authorized capital of this corporation.

The machinery, tools, etc., consisted merely of a few hand tools, and were considered of practically no value. The corporation entered the license agreement upon its books at $3,000,—$500 being entered as paid-in surplus.

Some time later Daniel C. and Joseph Hirsch each transferred his stock to Nachmann in satisfaction of his agreement to pay Nachmann $1,000.

The corporation carried on operations under the license agreement and paid the required royalties until the year 1918, when the United States District Court for the Eastern Division of the Northern District of Illinois, in the case of *Marshall Ventilator Mattress Co. v. The Nachmann Co., a corporation, and Fred A. Nachmann,* rendered a decision holding that the device being manufactured and sold by The Nachmann Co. under Letters Patent No. 912,456 was an infringement upon a prior patent owned by the plaintiff, whereupon petitioner's license agreement and the payment of all royalties thereunder were canceled and terminated.

When making its return for 1918, petitioner claimed a deduction from gross income of $3,000, as a loss sustained by reason of the termination of its license under the patent declared invalid. The Commissioner denied the deduction upon the ground that the license agreement, at the time acquired, was without value and that it was acquired without cost.

OPINION.

LITTLETON: The patent license was acquired by Nachmann without cost. He expended in excess of $3,000 in developing the articles and subsequently transferred the license to the petitioner for $3,000 par value stock. The license may have had a cash value in August, 1915, but the evidence before us does not establish what such value was. The fact that Nachmann expended $3,000 in developing the patented article does not warrant a conclusion that the license had an actual cash value equal to that amount, nor do the royalties paid, or the resolution of the directors, standing alone, prove actual value.

*Judgment for the Commissioner.*